**E-FILED**
Wednesday, 29 December, 2004 10:06:01 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| RONNIE V. JOHNSON, #N-12401, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. 04-2110 |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| MARY MILLER, HEALTH CARE UNIT | ) | |
| ADMINISTRATOR, DOCTOR RONALD | ) | |
| SCHAEFER, MD, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT
OF DEFENDANT'S MOTION TO DISMISS**

NOW COMES the Defendant, MARY MILLER, by and through her attorney, Lisa Madigan, Attorney General for the State of Illinois, and in support of her Motion to Dismiss, submits the following Memorandum of Law:

**BACKGROUND**

Plaintiff is an inmate, currently incarcerated at Danville Correctional Center, who brings his complaint pursuant to 42 U.S.C. §1983 alleging deliberate indifference to serious medical needs. Specifically, Plaintiff alleges he has Hepatitis C, but complains that the Defendants are not properly testing or treating him for the illness. Plaintiff attaches medical records, grievances, and memorandums, as well as excerpts from books and the internet regarding the diagnosis and treatment of Hepatitis C. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

> **A.   The documents attached to Plaintiff's Complaint establish he has failed to state a claim for Deliberate Indifference to Serious Medical Needs.**

In <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976), the Supreme Court held that in order to violate a prisoner's Eighth Amendment rights as they relate to medical care, an official must demonstrate deliberate indifference to the serious medical needs of that inmate, and concluded that "deliberate indifference to serious medical needs of prisoners" constitutes the "unnecessary and wanton infliction of pain," 429 U.S. 97, 104 (1976).  However, the Court drew a distinction between an "inadvertent failure to provide adequate medical care," <u>Estelle</u> at 105, and "an unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind."  <u>Estelle</u> at 106.

"To raise an Eighth Amendment issue, 'the infliction [of punishment] must be deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the dfendant actually knew of an impending harm easily preventable.'"  <u>Snipes v. Detella</u>, 95 F.3d 586, 590, <u>citing</u> <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1427 (7th Cir. 1995).  Furthermore, "mere negligence or even gross negligence does not constitute deliberate indifference."  <u>Id</u>., <u>citing</u> <u>Wilson v. Seiter</u>, 501 U.S. 294,305 (1991).  Likewise, "medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment *such as whether one course of treatment is preferable to another'* are beyond the Amendment's purview."  <u>Snipes v. Detella</u>, 95 F.3d 586, 591 (7th Cir. 1996)(emphasis added).

While the state has "an affirmative obligation under the Eighth Amendment to provide persons in its custody with a medical care system that meets minimal standards

of adequacy," (Meriwether v. Faulkner, 821 F.2d 408, 4ll (7th Cir. 1987)), inmates are not entitled to unqualified access to health care. Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 1000 (1992); see also Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321 (1991). "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." Snipes at 592. Finally, prison administrators must rely on those with medical expertise to assess the needs of inmates and to prescribe treatment. McEachern v. Civiletti, 502 F. Supp. 532, 534 (N.D. Ill. 1980).

Plaintiff alleges he should have received certain diagnostic tests to evaluate his Hepatitis C, including a liver biopsy (Complaint, para. 27). He also alleges he should be treated with medications including, according to documents attached to the complaint, ribavirin. Plaintiff admits he was informed of his diagnosis of Hepatitis C on or about January 5, 2004 by a physician's assistant, Mr. Momoduo (Complaint, para. 9). Almost immediately thereafter, Plaintiff began lobbying, via the grievance procedure, for the particular diagnostic testing and subsequent treatment he desired (Complaint, para. 10). Plaintiff received a response to his grievance on January 26, 2004, which stated the Health Care Unit Administrator (Defendant Miller) had been notified of the grievance and that she had reviewed Plaintiff's medical records. The response went on to explain that while Plaintiff was, indeed, positive for Hepatitis C, he did not meet all of the criteria for treatment (Complaint, para. 14).

Plaintiff takes exception to this response, which is also confirmed by way of Plaintiff's medical records, in which the physician states, in part, on March 4, 2004, "[p]t not

3

a good candidate for Hep C. Treatment . . . " (See Medical Progress Note dated March 4, 2004 attached to Complaint).  The response was transmitted to Plaintiff via his grievance response, as well as a memo, dated March 15, 2004 from Mary Miller (See Memo attached to Complaint).  This memo outlined the fact that the criteria for treatment for Hepatitis C was explained to Plaintiff, that he has received the appropriate testing, and that he was being followed closely by the physician.  There is also documentation that Plaintiff was ordered a repeat Hepatitis B panel by Dr. Schaefer (See Memo, dated March 11, 2004, attached to Complaint), and that Plaintiff saw either the physician or the physician's assistant on April 2, 2004, and was ordered to receive additional lab tests (See Medical Progress Note dated April 2, 2004 and attached to Complaint).  Plaintiff attached various laboratory results to his complaint.

     Plaintiff does not allege he is a physician, or has any medical training at all.  He does not allege that any physician or other medical person by whom he has been examined, has recommended any specific treatment.  He merely attaches to his complaint, as authority for the proposition that he is receiving inadequate care, excerpts from a book about Hepatitis and articles from the internet discussing the diagnosis and care of Hepatitis.  These articles suggest that certain persons are amenable to treatment with medications, including ribavirin, but also admit some persons are not amenable to treatment.  Plaintiff's Exhibit H, page 14 of 28, includes a statement that, "The National Institutes of Health Consensus Development Conference Panel recommended that therapy for hepatitis C be limited to those patients who have histological evidence of progressive disease."  Likewise, the documents attached to Plaintiff's Complaint also suggest that, "[p]eople with both HCV and HIV infection should be offered therapy for hepatitis C as long

as there are no contraindications." (Plaintiff's Exhibit H attached to Complaint, page 15 of 28). Far from intimating that every person with a diagnosis of Hepatitis C should be treated in a specific manner, Plaintiff's own exhibits establish that an individual's treatment is discretionary and should be determined by a physician. The articles also discuss the side effects of the drugs and state, ". . . but the drugs can cause unpleasant side effects and do not clear the virus in all people." (See Plaintiff's Exhibit D attached to Complaint, page 1).

Plaintiff's desired treatment is not without risks. Plaintiff admits in his complaint that he suffers from diabetes and was diagnosed as having a Hepatitis-B coinfection (Complaint, para. 36 and 47). Obviously, Plaintiff has other medical concerns that must be considered by the physicians and other medical personnel prior to starting Plaintiff on medications with serious side effects. Plaintiff has not alleged that any of the authors of the articles he attaches as authority for a specific treatment has ever examined him or reviewed his medical records.

The gravamen of Plaintiff's complaint that he is not happy with the treatment he is receiving for a specific complaint. Such does not rise to the level of a constitutional violation. *See* Snipes at 592. Because Plaintiff's complaint establishes on its face, that he was diagnosed, tested, and was seen by physicians and physician's assistants for his complaints, that they used their professional judgment to determine that he could not safely be treated with medications for his Hepatitis C and/or that treatment at this time was not proper, he cannot establish deliberate indifference to his serious medical need. Furthermore, when confronted with Plaintiff's grievance about his medical care, the complaint establishes on its fact, that Defendant Miller reviewed the records to determine

5

what care was given Plaintiff. The response to that review establishes that Defendant Miller knew that Plaintiff had seen the physician for his complaints and that treatment was contraindicated. As a non-physician, Defendant Miller is not alleged to be licensed to diagnose or prescribe treatment. She is alleged, in paragraph 5 of Plaintiff's Complaint, to be "responsible for the administration, operation and supervision of IDOC, DCC, medical staff and facility, [and] for ensuring that all prisoners receive appropriate medical care . . . ." Defendant Miller determined that Plaintiff had been under a physician's care for his Hepatitis C, that Plaintiff was not currently a good candidate for drug treatment, and that he would continue to be followed closely by physicians for this illness. As a non-physician, she had fulfilled any duty to the Plaintiff with regards to his medical care. Her acts do not evidence deliberate indifference, and the case should be dismissed.

    **B.    Plaintiff is not entitled to declaratory relief where there is no ongoing violation of federal law.**

Courts cannot issue a declaratory judgment for a violation of federal law in the past when there is no ongoing violation of federal law. <u>Green v. Mansour</u>, 474 U.S. 64 (1985). In this case, while Plaintiff alleges his medical care, or lack thereof, is continuing, the documentation submitted with his complaint establishes that he has suffered no constitutional violation with regards to his medical care. Because there has been no constitutional violation, there can be no ongoing violation, without which Plaintiff is not entitled to declaratory relief.

    **C.    Plaintiff is not entitled to Injunctive Relief.**

In this case, Plaintiff seeks injunctive relief as well as damages. It is well established that "[w]hen there is no continuing violation of federal law, injunctive relief is

not part of a federal court's remedial powers." Al-Alamin v. Gramley, 926 F.2d 680,685 (7th Cir. 1991).

Because Plaintiff has failed to state a cause of action for deliberate indifference, and because he has failed to establish a constitutional right to any particular medical diagnostic procedure or treatment, he is not entitled to injunctive relief.

**D.    Defendant Miller is entitled to Qualified Immunity.**

Defendant Miller is entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800 (1982).

In defining the right, the Court stated that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates the right. . . it is to say that in the light of the preexisting law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "A qualified immunity analysis entails a purely objective inquiry to determine whether, at the time of the alleged illegal act, the right asserted by the plaintiff was clearly established *in the particular factual context presented.*" Polenz v. Parrott, 883 F.2d 551, 554 (7th Cir. 1989)(emphasis added).

In this case, the established law is clear that while inmates are entitled to medical care, they are not entitled to unlimited care nor specific medical care. Plaintiff has submitted medical records that establish the decision to not treat his Hepatitis C with medications was a considered medical decision. It is also established law in the Seventh

Circuit that differences in medical opinions as to treatment is not a constitutional violation, neither is an inmate's dissatisfaction with his medical care. See Snipes v. Detella, 95 F.3d 586, 591 (7th Cir. 1996). Plaintiff has submitted no law that would place a non-physician, Health Care Unit Administrator on notice that to fail to override a physician's treatment plan in the diagnosis and treatment of Hepatitis C would violate an inmate's constitutional rights. Because the contours of the right alleged must be defined, and because Plaintiff has submitted no law to establish that the acts of this defendant would violate Plaintiff's constitutional rights, Defendant Miller is entitled to qualified immunity.

## CONCLUSION

While it is true that the standard for pleading pursuant to Fed. R. Civ. P. 8(a) requires only a short and plain statement of the claim, it is also true that a plaintiff can assert facts and effectively plead himself out of court. McCormick v. City of Chicago, 230 F.3d 319, 325 (7th Cir. 2000).

In this case, Plaintiff's "authority" establishes, for purposes of this motion, that while drug treatment for Hepatitis C is available, and perhaps preferred, it is not always recommended. Moreover, it establishes that drug treatment is not without serious side effects of its own. All of Plaintiff's submissions show he has been, and continues to be evaluated for Hepatitis C, as well as his other medical complaints. It can be easily inferred, therefore, from Plaintiff's "authority" that the determination of whether certain diagnostic tests or treatment for Hepatitis C should be made by a physician who is familiar with the patient's medical history and test results. Nothing in Plaintiff's complaint suggests that Defendant Miller, as Health Care Unit Administrator, or any of the medical personnel

treating Plaintiff have the requisite subjective intent to cause Plaintiff harm by ignoring his medical needs.

                                        Respectfully submitted,

                                        MARY MILLER,

                                            Defendant,

                                        LISA MADIGAN, Attorney General,
                                        State of Illinois

Kelly R. Choate, #6269533              Attorney for Defendant,
Assistant Attorney General
500 South Second Street
Springfield, Illinois  62706           By:  s/ Kelly R. Choate
(217) 782-9026                               KELLY R. CHOATE
                                                Assistant Attorney General

Of Counsel.

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| RONNIE V. JOHNSON, #N-12401, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | No. 04-2110 |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| MARY MILLER, HEALTH CARE UNIT ) | |
| ADMINISTRATOR, DOCTOR RONALD ) | |
| SCHAEFER, MD, ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

    I hereby certify that on December 29, 2004, I electronically filed a Memorandum of Law in Support of Defendant's Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

Keith Brandon Hill
khill@hrva.com

Richard P. Klaus
rklaus@hrva.com

and I hereby certify that on December 29, 2004, I mailed by United States Postal Service, the document(s) to the following non-registered participant(s):

Ronnie V. Johnson, #N-12401
Danville Correctional Center
3820 East Main Street
Danville, Illinois  61834

    Respectfully Submitted,
    s/ Kelly R. Choate
Kelly R. Choate, #6269533
Assistant Attorney General
Attorney for Defendant
500 South Second Street
Springfield, Illinois  62706
Telephone:  (217) 782-9026
Facsimile:   (217) 524-5091
E-Mail:  kchoate@atg.state.il.us