**ILLINOIS DEPARTMENT OF CORRECTIONS**
**COMMITTED PERSON'S GRIEVANCE**

| Date: March 2, 2005 | Committed Person: (Please Print) JOHNSON, RONNIE V. | ID#: N-12401 |
|---|---|---|
| Present Facility: Danville | Facility where grievance issue occurred: Danville | |

**NATURE OF GRIEVANCE:**

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [x] Medical Treatment
- [ ] Disability
- [ ] Other (specify): _____
- [ ] Disciplinary Report: ____/____/____   Date of Report   Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
- **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
- **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
- **Chief Administrative Officer,** only if EMERGENCY grievance.
- **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** Commencing about September 1981, Inmate JOHNSON tested positively for hepatitis-B virus. JOHNSON was tested again in the year of 1990, and was subsequently shown to have cleared the hepatitis-B virus.

01. In January, 2004, JOHNSON was advised that he tested positively for hepatitis-C and that Danville will not provide treatment.

02. On April 14, 2004, JOHNSON filed Grievance #DN4-73 regarding "Medical Treatment" and allegation that there has been deliberate indifference to the serious medical needs of JOHNSON. (SEE ATTACHED Ex. 1)

03. In response to revelations by irrefutable authorities cited in the grievance, on April 15, 2004, Dr. RONALD SCHAEFER, MD, was constrained to rescind and to reverse his

**Relief Requested:** Referral to a specialist - either a gastroenterologist or a hepatologist - for further evaluation and treatment including a liver biopsy.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Joh., Ro V._   Committed Person's Signature     N-12401 ID#     03/02/05 Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: ____/____/____

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: _____

_____ Print Counselor's Name    _____ Counselor's Signature    ____/____/____ Date of Response

---

**EMERGENCY REVIEW**

Date Received: ____/____/____    Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

_____ Chief Administrative Officer's Signature    ____/____/____ Date

prognostication and that Dr. SCHAEFER noted "Review of recent labs that show hepatitis-B core negative and review of persistent request by inmate for the work up lead me to request hepatitis-C viral load and PT/PTT blood test after which I will request liver biopsy from wexford health." (SEE ATTACHED Ex. 2)

04. On April 20, 2004, CYNTHIA P. EMBRY, Grievance Officer, submitted recommendation that "... The doctor needs to complete the PT/PTT blood test & if necessary a liver biopsy before making a final decision about the need for a specialist." (SEE ATTACHED Ex. 3)

05. On April 29, 2004, JOHNSON was seen by medical care provider and had blood drawn for PT/PTT test. The results thereof were received at Danville on May 4, 2004. (SEE ATTACHED Exs. 4 & 5)

06. On July 13, 2004, JOHNSON was seen by medical care provider as relates to previous assertion by Dr. SCHAEFER that JOHNSON would be submitted to wexford health for a liver biopsy. Subsequent thereto, on July 15, 2004, JOHNSON learned that Dr. SCHAEFER had terminated his employment at Danville and that Dr. SCHAEFER had not submitted JOHNSON for the liver biopsy. (SEE ATTACHED Exs. 6 & 7)

07. On July 28, 2004, Dr. MARY MENDUS, MD, advised JOHNSON that "I have now checked the guidelines and advised patient that he does not qualify for liver biopsy until enzymes are 2X normal." (SEE ATTACHED Ex. 8)

08. On November 7, 2004, JOHNSON was seen by medical care provider and complaining of "upper right quadrant pain." (SEE ATTACHED Exs. 9 thru 11)

09. On November 12, 2004, JOHNSON was seen by Dr. MENDUS of whom advised JOHNSON that perhaps it is JOHNSON'S right lung and not his liver that is causing him pain. Dr. MENDUS thereupon submitted JOHNSON for an x-ray of his lungs. (SEE ATTACHED Exs. 12 & 13)

10. On or about February 16, 2004, JOHNSON was seen by Dr. Shute and complaining again of "upper right quadrant pain." At which time, Dr. Shute acknowledged that the area in which JOHNSON is experiencing pain is in fact JOHNSON's liver. However, Dr. Shute offered no statement of any suggested course of action and JOHNSON was given the impression that no action would be even remotely considered.

11. JOHNSON has subsequently conducted some research and have found that the condition of which he is complaining might very well be related to a form of liver disease. (SEE ATTACHED Ex. 14) As such, liver biopsy is the only certain method of ascertaining information relative to the state of the condition of JOHNSON'S liver.

12. In consideration of the foregoing, JOHNSON complains that health care providers have glommed over medical facts and written off JOHNSON for consideration; that health care providers have sought to find pseudomedical reasons for denying JOHNSON access to a liver specialist and that by withholding a liver biopsy and other tests JOHNSON is being refused or delayed receipt of treatment in order to save the system money.

cc: File
    Dr. H. LOCHARD, Director
    Dr. SHUTE, MD.
    MARY MILLER, RNBS, HCUA