UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

E-FILED
Thursday, 19 May, 2005 03:31:17 PM
Clerk, U.S. District Court, ILCD

RONNIE V. JOHNSON,           )
                             )
            Plaintiff,       )
                             )   CASE NO. 04-2110
      vs.                    )
                             )
WEXFORD HEALTH SOURCES, INC.,)
MARY MILLER, HEALTH CARE UNIT)   HONORABLE  Harold A. Baker
ADMINISTRATOR, DOCTOR RONALD )              Presiding Judge
SCHAEFER, MD,                )
                             )
            Defendants.      )

**Plaintiff's Supporting Brief and Argument
for the Grant of Summary Judgment**

FILED
MAY 19 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

COMES NOW Pro Se Plaintiff, RONNIE V. JOHNSON, and prays for the Grant of Summary Judgment, as due:

Statement of the Case

This is a § 1983 action filed by Pro se Plaintiff RONNIE V. JOHNSON, a prisoner at Danville Correctional Center, seeking damages, a declaratory judgment, and injunctive relief based on defendants' deliberate indifference to Plaintiff's serious medical needs that constitutes the unnecessary and wanton infliction of pain and injury on his body in violation of his Eighth Amendment Constitutional right, under the United States Constitution. In that defendants have refused to afford Plaintiff all necessary and required care and treatment regarding his serious Hepatitis C infection. In this action, Plaintiff supports his request for a grant of summary judgment against each defendant.

- 1 -

## Statement of Facts

As set forth in the accompanying Statement of Undisputed Facts and in the Verification Declaration; and, as additionally put forward in Plaintiff's Complaint and in the documents attached thereto and in the Supporting Appendix of Exhibits concerning this action; it is reported that in January of 2004, a contractural employee of defendant Wexford Health Sources, Inc., advised and informed Plaintiff that his body was infected with the Hepatitis C Virus. Additionally, MOMODUO SALLAH, Physicians Assistant, informed Plaintiff that neither the Illinois Department of Corrections nor the Danville Correctional Center's Health Care Unit will provide care and treatment for Hepatitis C infections. Further, such employee of the defendants informed Plaintiff that, even though Plaintiff faced the possibility of imminent death as a direct result of the Hepatitis C infection, there was nothing they (defendants) could do for him.

Plaintiff filed grievances and submitted informal complaints to the prison's wardens and to the defendants. Plaintiff's grievances and informal complaints challenged the defendants' actual denial and refusal either to conduct necessary diagnostic testing and medical procedures to determine the extent of the injury and damage the Hepatitis C infection had caused in Plaintiff's body and in his liver and/or defendants' decision not to administer or prescribe any medical therapy to control or cure the infection to save Plaintiff from additional body injury, damage and death.

During the litigation of Plaintiff's grievances and informal complaints, defendant MARY MILLER admitted and confirmed the defendants' refusal to afford Plaintiff any care or treatment for his Hepatitis C condition. Therein, MILLER stated and indicated that Plaintiff was being denied care and treatment for his Hepatitis C infection under the Federal Bureau of Prisons Practice Guidelines, respecting the criteria for treatment of Viral Hepatitis. In that, care and treatment of Plaintiff's Hepatitis C infection was contraindicated under those medical practice guidelines. Thus, defendant MARY MILLER, Health Care Unit Administrator, caused the denial of Plaintiff's grievances and the denial of care and treatment for his Hepatitis C condition.

Again, in March of 2004, as a result of Plaintiff's grievances and informal complaints to the prisons wardens, Plaintiff was advised, by defendant DOCTOR RONALD SCHAEFER, that Plaintiff was disqualified for Hepatitis C treatment because he is a diabetic and has a Hepatitis B coinfection. Defendant DOCTOR RONALD SCHAEFER did indicate that his decision not to order any care and treatment for Plaintiff's Hepatitis C infection was based on and determined by the criteria for Hepatitis C treatment used by the Health Care Unit to make such decisions.

In March of 2004, Plaintiff's diabetic condition was neither uncontrolled nor in an uncontrollable condition. Plaintiff's normal serum glucose test results did not indicate any disqualification for Hepatitis C care and treatment. And, further, DOCTOR SCHAEFER'S

- 3 -

presumption of Plaintiff's disqualification for care and treatment of his Hepatitis C condition was revealed as erroneous by the evidence of a negative blood test finding for Hepatitis B coinfection that was returned regarding Plaintiff on March 10, 2004, six days later.

Consequently, in response to Plaintiff's April 14, 2004 grievance asking for necessary Hepatitis C care and treatment, defendant DOCTOR SCHAEFER admitted that blood tests indicated that no sign of Hepatitis B coinfection was present in Plaintiff and he was *not* otherwise disqualified for care and treatment for his Hepatitis C condition. Therefore, DOCTOR SCHAEFER stated and indicated in the record that the required liver biopsy would be performed on Plaintiff and a liver specialist would be allowed to examine and treat Plaintiff; *if* a PT/PTT blood test showed his blood clotting factors measured within the normal range.

Thereafter, neithe a liver biopsy was performed on Plaintiff to determine what damaging effects the Hepatitis C infection had done to his body, *nor* was a specialist in the treatment of Hepatitis C infection allowed to manage a therapy of care and treatment on Plaintiff as had been stipulated by DOCTOR SCHAEFER. Thus, the defendants maintained their decision and refusal not to treat Plaintiff, even though the PT/PTT blood tests were done on April 29, 2004, and gave evidence that Plaintiff's blood clotting factors measured normal.

- 4 -

After Plaintiff fully exhausted his administrative remedies and efforts to get the defendants to live up to their duty to adequately address his serious health problem and as a prisoner having no recourse to get necessary diagnostic testing and a therapy of treatment for his Hepatitis C condition, Plaintiff filed his civil rights complaint in June of 2004.

**ARGUMENT FOR RELIEF**

(I.) DEFENDANTS ACTED WITH DELIBERATE INDIFFERENCE AND RECKLESSNESS WHEN THEY REFUSED CARE AND TREATMENT FOR HIS HEPATITIS C INFECTION, THAT THEY KNEW ABOUT BUT DISREGARDED AS A SERIOUS RISK TO PLAINTIFF'S HEALTH IN VIOLATION OF HIS EIGHTH AMENDMENT CONSTITUTIONAL RIGHT AND PROTECTION, UNDER THE UNITED STATES CONSTITUTION, AGAINST WANTON AND UNNECESSARY INFLICTION OF PAIN, PHYSICAL INJURY AND DEATH.

(II.) THERE BEING NO GENUINE ISSUE AS TO ANY MATERIAL FACT, REGARDING DEFENDANTS' WRONGFUL ACTS AND OMISSION, PLAINTIFF IS ENTITLED TO A JUDGMENT AS TO LIABILITY: INJUNCTIVE AND DECLARATORY RELIEF AS A MATTER OF LAW.

( Point A )

Defendants' CLAIM OF ANY IMMUNITY DEFENSE AT TRIAL WOULD NOT PREVAIL: While qualified immunity protects government officials and those private individuals, or corporations acting under the

color of state law with them, from civil liability when performing discretionary functions; their conduct has no immunity protection where it does violate clearly established constitutional rights. **Harlow v. Fitzgerald**, 102 S.Ct. 2727. Likewise, the same concept of law is applicable to those defendants who follow their superiors orders or policy and to those who violate clearly established law of which a reasonable person would have known. **J.H.H. v. O'Hara**, 878 F.2d 240, 244 n.4 (8th Cir. 1989), cert. denied, 493 U.S. 1072 (1990); **Elliott v. Thomas**, 937 F.2d 338, 344 (7th Cir. 1991).

In this case, defendants well-understood the serious nature of Plaintiff's Hepatitis C condition; as professional health care providers, they were fully advised and knew that Plaintiff had an Eighth Amendment Constitutional Right to care and treatment of his condition. Thus, the rule of "objective legal reasonableness," applied to the plain facts of the defendants' actions and omissions regarding Plaintiff's health problem, does direct the conclusion that such actions and omissions done by defendants that qualified immunity is not a viable defense for them. SEE: **Harlow v. Fitzgerald**, Supra; **Anderson v. Creighton**, 483 U.S. 634, 641, 107 S.Ct. 3034 (1987).

Further, in view of the fact that Plaintiff is suing defendants individually and severally in their individual capacities for acts and omissions they committed while acting under color of state law, qualified immunity does not protect them in this cause of action. (SEE: Plaintiff's Complaint, PP. 3-4; **Wyatt v. Cole**, 112 S.Ct. 1829, 1833-34 (1992).

( Point B )

HEPATITIS C IS A PROGRESSIVE AND A SERIOUS MEDICAL CONDITION: Hepatitis C is a viral infection that causes inflammation, injury and ultimately scarring of the liver. It is progressive and represents a serious health problem. Especially, Hepatitis C is extremely dangerous if it damages the liver to the point of cirrhosis and liver failure. And, there is a high mortality rate associated with chronic Hepatitis C infections. (SEE: <u>Statement of Undisputed Facts</u> (hereafter cited as SUF), ¶ 8; EXHIBIT # 4).

Chronic Hepatitis C is defined as inflammation of the liver caused by HCV that continues for more than six months. In people with chronic Hepatitis C, the immune system has failed to clear the virus from the body. Therefore, all individuals with chronic Hepatitis C will have an elevated HCV RNA. And, once a person is chronically infected with HCV, the potential exists for liver damage and cirrhosis along with its complications, including liver failure and liver cancer. (SEE: SUF, ¶ 9; EXHIBIT # 5).

( Point C )

THE EVIDENCE IN THE RECORD SHOW THAT PLAINTIFF HAS CHRONIC HEPATITIS C: On January 5, 2004, Plaintiff was advised and informed by MOMODUO SALLAH, a Physicians Assistant employed by defendant Wexford Health Sources, Inc., at the Danville Correctional Center's Health Care Unit, that he had been diagnosed positively with Hepatitis C. (SEE: SUF, ¶ 3). This diagnosis was made and is apparent from the elevated levels of transaminases (AST/ALT) found in the chemistries of Plaintiff's blood. And, the record gives

- 7 -

evidence that between April 3, 2001 and March 7, 2003, Plaintiff's transaminase levels measured slightly more than two (2) times the normal reference levels. (SEE: SUF, ¶¶ 10-12; EXHIBIT # 8).

On April 16, 2004, Plaintiff was advised by defendants that the blood specimen taken from him at that time tested positive for Hepatitis C Virus RNA. That his condition had progressed to be chronic and of the most serious form of Hepatitis C. (SEE: EXHIBIT # 8, Lab Test Result of 04/16/04); (SEE also: SUF, ¶ 9; EXHIBIT # 5).

( Point D )

DEFENDANTS OBJECTIVELY AND SUBJECTIVELY KNEW, OR SHOULD HAVE KNOWN, OF THE SERIOUS RISK PLAINTIFF'S HEPATITIS C INFECTION REPRESENTED TO HIS HEALTH AND WELL-BEING: Defendant DOCTOR RONALD SCHAEFER is a licensed medical doctor and in his capacity as a contractual employee of the Wexford Health Sources, Inc., and as a physician in the Health Care Unit of the Danville Correctional Center, DOCTOR SCHAEFER had the responsibility for identifying prisoners with medical needs and making sure they received the necessary care and treatment for their medical condition. Defendant MARY MILLER was, at all times pertinent to this case, the Health Care Unit Administrator at the Danville Correctional Center. She is responsible for the supervision of medical staff and has a duty to ensure that all prisoners held at the prison receive appropriate medical care and treatment. Defendant Wexford Health Sources, Inc., is a Health Maintenance Organization. Under color

of State law, this defendant has a contractual agreement with the State of Illinois to provide medical care providers to work in the Danville Correctional Center's Health Care Unit; and, is thereby responsible for ensuring that all prisoners held at the prison receive appropriate medical care and treatment. (SEE: (Plaintiff's Complaint, PP. 2-3).

From the objective results of blood tests and examinations performed on Plaintiff's blood and body; the defendants could have and did conclude that Plaintiff had a chronic Hepatitis C infection. Especially, on April 20, 2004, defendant DOCTOR RONALD SCHAEFER concluded that Plaintiff's Hepatitis C condition had progressed to the point that a liver biopsy needed to be performed on Plaintiff to determine the extent of the injury and damage that had been done to his body and liver by the Hepatitis C infection. Additionally, DOCTOR SCHAEFER concluded that a Specialist Doctor was necessary to provide care and treatment of Plaintiff's chronic Hepatitis C condition. (SEE: SUF, ¶ 18; EXHIBIT # 11).

From the many grievances and informal complaints plaintiff caused to be submitted against defendants, defendants were fully advised and informed of the serious nature of Plaintiff's Hepatitis C condition. (SEE: SUF, ¶¶ 4-7).

( Point E )

DEFENDANTS ACTED WITH DELIBERATE INDIFFERENCE AND RECKLESSNESS WHEN THEY DENIED AND REFUSED PLAINTIFF CARE AND TREATMENT OF HIS HEPATITIS C CONDITION, IN VIOLATION OF HIS EIGHTH AMENDMENT CONSTI-

TUTIONAL RIGHT AND PROTECTION: On January 5, 2004, immediately after determining that Plaintiff had the Hepatitis C infection in his body, MOMODUO SALLAH, a Physician's Assistant employed by defendant Wexford Health Sources, Inc., at the Health Care Unit supervised by defendant MARY MILLER, denied and refused Plaintiff any care and treatment for his illness. In fact, Plaintiff was then informed of the policy and practice by the Health Care Unit not to provide treatment for Hepatitis C infections. (SEE: SUF, ¶ 3).

On or about January 23, 2004, defendant MARY MILLER, Health Care Unit Administrator, confirmed the denial and refusal of care and treatment for Plaintiff's Hepatitis C infection. MARY MILLER indicated that Plaintiff "Does not meet the criteria for treatment" of his Hepatitis C condition. And, on February 9, 2004, the Administrative Review Board affirmed the denial of the grievance by Plaintiff in which he complained about the denial and refusal of medical care and treatment of his Hepatitis C condition. (SEE: SUF, ¶¶ 5-6).

Between January 28, 2004 thru February 26, 2004, defendant MARY MILLER ignored the numerous requests Plaintiff sent to her office. Such requests sought the basis upon which the Health Care Unit had denied and refused Plaintiff any care and treatment for his Hepatitis C condition; and, to have defendant MARY MILLER to give a reason why neither follow-up serologic nor liver biopsy testing had been conducted. Additionally, such requests asked for a copy of the Criteria for Treatment of Hepatitis, used by defen-

dant MILLER to justify the denial and refusal of care and treatment concerning Plaintiff's Hepatitis C condition. (SEE: SUF, ¶ 7 EXHIBIT # 3).

On March 4, 2004, defendant DOCTOR RONALD SCHAEFER denied and refused Plaintiff care and treatment for his Hepatitis C condition. In that, defendant SCHAEFER indicated that due to the fact Plaintiff is a diabetic and has a Hepatitis B coinfection, Plaintiff was disqualified for Hepatitis C treatment. (SEE: SUF, ¶ 15; ALSO: Plaintiff's Complaint, page 9).

Contrary to the reasons and the justifications for the denial and refusal to provide Hepatitis C care and treatment concerning Plaintiff, put forward by the defendants; the Federal Buearu of Prisons Drafted Practice Guidelines for the Prevention and Treatment of Viral Hepatitis C (cited by defendants as the criteria used to refuse Plaintiff Hepatitis C treatment); the fact of a diabetic condition and/or a Hepatitis B coinfection is not listed as an absolute contraindication for the care and treatment of a prisoner's Hepatitis C condition. Neither would serve to disqualify a patient from receiving either diagnostic blood and liver testing, or, the necessary care and treatment for his illness. (SEE: SUF, ¶ 16); SEE ALSO: Federal Criteria for Hepatitis C Treatment, EXHIBIT # 6, pages 6-26). Especially, Plaintiff's diabetic condition was not and is not either uncontrolled or uncontrollable and that this fact does not disqualify Plaintiff for care and treatment for his Hepatitis C condition. And, where the evidence in the record of this

case proves that Plaintiff has never tested positive for a Hepatitis B coinfection. In that, a Hepatitis B Panel test performed on March 10, 2004, showed a negative result for a Hepatitis B coinfection. (SEE: SUF, ¶¶ 16-17); EXHIBIT # 8, [note the nor-normal serum glucose test results and the negative Hepatitis B coinfection findings); SEE ALSO: EXHIBIT # 6, pages 6-28). Thus, contrary to the cited reasons and justifications for refusal of treatment given by defendants, Plaintiff was in fact a qualified candidate for diagnostic, liver biopsy testing and for care and treatment for his Hepatitis C condition.

In proof of these facts, on April 20, 2004, defendant DOCTOR RONALD SCHAEFER admitted that Plaintiff was a good candidate for diagnostic testing, a liver biopsy and that Plaintiff should have a specialist doctor to manage the care and treatment for Plaintiff's Hepatitis C condition. Defendant Schaefer made such testing, specialist doctor and care and treatment conditional on Plaintiff's PT/PTT INR blood clotting tests being tested as normal. Nevertheless, even though Plaintiff's PT/PTT blood clotting tests resulted in only normal readings, all diagnostic testing, liver biopsy testing, a specialist doctor and care and treatment for his Hepatitis C condition were thereafter denied and refused to Plaintiff. (SEE: SUF, ¶¶ 18-20); EXHIBIT # 11, (in re: Defendant DOCTOR SCHAEFER'S statements to Grievance Officer)).

( Point F )

WHERE THE RECORD BEFORE THE COURT CONTAINS A <u>PRIMA FACIE</u> SHOWING, DOCUMENTED BY SUPPORTING EVIDENCE, THAT DEFENDANTS ACTED WITH DELIBERATE INDIFFERENCE AND RECKLESSNESS WHEN THEY REFUSED CARE AND TREATMENT OF PLAINTIFF'S HEPATITIS C CONDITION: NO GENUINE ISSUE AS TO ANY MATERIAL FACT REGARDING DEFENDANTS' WRONGFUL ACTS AND OMISSIONS EXISTS CONCERNING THIS CASE AND PLAINTIFF IS ENTITLED TO A JUDGMENT AS TO LIABILITY AS A MATTER OF LAW.

The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care and reasonable safety as well as warmth and exercise." **Helling v. Mckinney**, 113 S.Ct. 2475, 2480. Regarding the basic human need of medical care, the Courts have commented and held that since prisoners cannot obtain their own medical services, the Constitution requires prison authorities to provide them with "reasonably adequate" medical care. **Newman v. Alabama**, 559 F.2d 283, 291 (5th Cir.); **Hoptowit v. Ray**, 682 F.2d 1237, 1246 (9th Cir.); **Wolfish v. Levi**, 573 F.2d 118, 125 (2nd Cir. 1978). And they have defined "adequate" medical services as "services at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards," and as "a level of health services reasonably designed to meet routine and emergency medical care." **Fernandez v. United States**, 941 F.2d 1488, 1493 (11th Cir. 1991); **United States v. DeCologero**, 821 F.2d 39, 43 (1st Cir. 1987).

Especially, the Supreme Court has stated that "deliberate indifference to serious medical needs of prisoners constitutes the

- 13 -

'unnecessary and wanton infliction of pain' ... proscribed by the Eighth Amendment." **Estelle v. Gamble**, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

Deliberate indifference can be shown in various ways. Sometimes it is demonstrated by acts or statements by prison personnel directly showing an indifferent or hostile attitude toward prisoners' medical needs. But most often, courts focus on facts that show that professional judgment was either not exercised or was not followed after it was exercised. In those fact situations, good intentions may not be plead as a defense. As one court stated: "Deliberate indifference can be proved by showing a prison official's mental state. But deliberate indifference is also a standard for measuring the adequacy of prison officials' responses to the known medical needs of inmates. **Wellman v. Faulkner**, 715 F.2d 269, 273 (7th Cir. 1983); **Dean v. Coughlin**, 623 F. Supp. 392, 402 (S. D. N. Y. 1985); **Week v. Chaboudy**, 984 F.2d 185, 187 (6th Cir. 1993)("... the facts establishes the case of a defendant's deliberate indifference.").

Under the Constitution, prison officials need provide care only for "serious medical needs." **Estelle v. Gamble**, Supra, at 429 U.S. 97, 104. And, they must provide care where the medical need is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. **Henderson v. Harris**, 672 F. Supp. 1054, 1056, 1059 (N.D. Ill. 1987). Especially, conditions that cause pain, discomfort, or threat to good health must be given care and treatment. **Dean v. Coughlin,** Supra, at 404.

In the instant case, Plaintiff charges that defendants' decision and refusal to test or treat his Hepatitis C infection was a deliberate violation of his Eighth Amendment Right. Clearly, where Plaintiff has a serious medical need and the defendants knew that his need is serious, defendants were deliberately indifferent when they denied and refused him necessary care and treatment; and, acted with deliberate indifference when they failed or refused to provide such care and treatment for Plaintiff's medical need even after their own stated professional judgment mandated necessary testing and specialized treatment for Plaintiff's Hepatitis C condition.

The material and relevant facts that establish Plaintiff's case are fully presented and documented. They are undisputed and cannot be controverted by any argument or defense the defendants might attempt to put forward at this time to protect themselves from Plaintiff's summary judgment action. While this Court is required to view the facts, pleadings and supplemental materials in light most favorable to defendants; it can employ its independent discretion and abilities to determine that there are truely no genuine issues that must be put to trial concerning this case. **Federal Rules of Civil Procedure**, Rule 56; **Zorn v. Helene Curtis, Inc.**, 903 F. Supp. 1226 (N.D. Ill. 1995).

On January 5, 2004, defendants' own professional medical judgment allowed them to determine that Plaintiff had a serious medical need. Diagnostic tests they had performed and their own

- 15 -

medical knowledge led them to be certain that Plaintiff's body was infected by the Hepatitis C virus and his condition was so serious that they advised Plaintiff he was facing eventual and imminent death as a result of his Hepatitis C illiness. (SEE: SUF, ¶ 3). Thus, defendants' "knew" about the obvious risk to Plaintiff's health and well-being and "knew" that additional diagnostic tests and procedures were available to allow Plaintiff's condition to be more fully assessed, treated and possibly cured. Nevertheless, defendants at this point made the deliberate decision to disregard the risk to Plaintiff and to deny him any care and treatment of his Hepatitis C infection.

Their stated reason for the denial and refusal of care and treatment of Plaintiff's serious medical needs at that time was that their policy was not to provide treatment for Hepatitis C infections. (SEE: SUF, ¶ 3; Plaintiff's Complaint, page 4). Later, on January 23, 2004, after the filing of Plaintiff's initial grievance complaint about defendants' refusal of medical care and treatment regarding his Hepatitis C condition, defendants indicated the reason why Plaintiff was denied and refused medical care and treatment was because "[He] does not meet the criteria for treatment." (SEE: SUF, ¶¶ 4-5).

Thereafter, from January 28th through February 26, 2004, defendants ignored Plaintiff's requests for the actual specific reasons why he was being denied treatment and his requests for a copy of the criteria defendants' used to make the decision not to

treat him. Additionally, Plaintiff's requests and grievance complaints to require defendants to do diagnostic tests and a liver biopsy to determine the severity of his Hepatitis C infection and necessary treatment for him were likewise ignored and thusly denied. (SEE: SUF, ¶ 7)

Finally, on March 4, 2004, defendant DOCTOR RONALD SCHAEFER advised Plaintiff that he was being refused treatment because his diabetic condition and a Hepatitis B coinfection disqualified him for Hepatitis C care and treatment. (SEE: SUF, ¶ 15). However, on April 15, 2004, defendant DOCTOR SCHAEFER reversed his decision not to provide any care and treatment regarding Plaintiff's Hepatitis C condition. DOCTOR SCHAEFER did so apparently after re-determining that Plaintiff had no Hepatitis B coinfection and that Plaintiff's diabetes did not disqualify him for care and treatment. (SEE: SUF, ¶¶ 15-18).

Defendant DOCTOR SCHAEFER made his Apr. 15, 2004, decision to concede diagnostic testing, liver biopsy, and the allowance of a Specialist Doctor to manage Plaintiff's care and treatment conditional on Plaintiff's PT/PTT INR blood clotting tests being tested as normal. However, on April 29, 2004, when Plaintiff's PT/PTT INR blood tests resulted in only normal readings, nothing was done by defendants to implement DOCTOR SCHAEFER'S treatment orders and recommendations. And, thereafter, (even to this present date) defendants have provided Plaintiff with neither necessary diagnostic tests, a liver biopsy, nor a Specialist Doctor to give and manage his care and treatment of his Hepatitis C illness. (SUF, ¶¶ 18-20).

Clearly, the intentional denial and refusal of needed medical care in this case violated Plaintiff's rights. **Isaac v. Jones**, 529 F. Supp. 175, 180 (N.D. Ill. 1981). And, the failure to conduct tests that Plaintiff's symptoms called for and the failure to conduct an adequate examination to determine the severity and damages the Hepatitis C illness has done to his body, to reach an informed medical judgment as to the care and treatment he needed show that Eighth Amendment is viable and would prevail at trial. **Miltier v. Beorn**, 896 F.2d 848, 853 (4th Cir. 1990); **Medcalf v. State of Kansas**, 626 F. Supp. 1179, 1183 (D. Kan. 1986); **Weaver v. Jarvis**, 611 F. Supp. 40, 44 (N. Ga. 1985).

Further, because this case directly involves defendants' actions of actually denying and refusing necessary care and treatment of Plaintiff's Hepatitis C condition; no defense that it is a "classical case of medical judgment" or one in which only a "disagreement between Plaintiff and his doctor's informed treatment decision" can possibly prevent the grant of summary judgment or prevail at trial. Normally, the courts will defer to the informed judgment of prison officials as to an appropriate form of medical treatment. But if an informed judgment has not been made or where there is a failure to carry out medical orders once a professional medical judgment had been made then the courts should not defer on this matter to the defendants. **Tillery v. Owens**, 719 F. Supp. 1256, 1308 (W.D. Pa. 1989), aff'd 907 F.2d 418 (3rd Cir. 1990); **Estelle v. Gamble**, 429 U.S. at 105.

MOMODUO SALLAH, Physician's Assistant; his defendant employer Wexford Health Sources, Inc., and MARY MILLER, Health Care Unit Administrator, completely failed to make either a professional or informed medical judgment on January 5, 2004, when they just flatly denied and refused necessary care and treatment for Plaintiff's Hepatitis C infection. And, on April 15, 2004, after defendant DOCTOR RONALD SCHAEFER finally determined that the necessary care and treatment are to be provided to Plaintiff; defendants were derelict in their duty to carry out the professional and informed medical decision and recommendations made by DOCTOR SCHAEFER when they completely failed, again, to provide necessary care and treatment to Plaintiff concerning his Hepatitis C condition.

Defendants knew that Plaintiff's Hepatitis C illness was progressive. That as early as February 2004, Plaintiff's condition had degenerated, that he was suffering a variety of extreme symptoms associated with the progressive nature of Hepatitis C condition that had become chronic and threatening to his well-being and his life. (SEE: SUF, ¶¶ 12,13,21). Nevertheless, they did and are now denying and refusing all care and treatment concerning Plaintiff's Hepatitis C condition.

For these reasons, this summary judgment action should be expiditiously determined. Especially, in view of Plaintiff's progressive illness that is degenerating his body, this action should secure a just and a speedy determination without delay. And, this matter should be allowed a prompt disposition because there are no genuine

issues, counter claims, or defenses defendants can show as to any material fact to controvert this motion for relief.

**WHEREFORE,** Plaintiff RONNIE V. JOHNSON, prays for summary judgment as to liability as to each defendant's wrongful actions that have violated his Eighth Amendment Constitutional Rights and Protections.

UNDER THE PENALTY OF PERJURY, I DO SWEAR THAT THE FORGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

/s/ *[signature]*
RONNIE V. JOHNSON
Pro se Plaintiff