UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

RONNIE V. JOHNSON,           )
                             )
            Plaintiff,       )
                             )    CASE NO.   04-2110
       vs.                   )
                             )
WEXFORD HEALTH SOURCES, INC.,)
MARY MILLER, HEALTH CARE UNIT)    HONORABLE   Harold A. Baker
ADMINISTRATOR, DOCTOR RONALD )                Presiding Judge
SCHAEFER, MD,                )
                             )
            Defendants.      )

FILED
MAY 19 2005
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA, IL

**STATEMENT OF UNDISPUTED FACTS AND DECLARATION IN
SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Pro se Plaintiff, RONNIE V. JOHNSON, submits the following list of undisputed facts that entitle Plaintiff to summary judgment on his claims against the defendants. And, Pro se Plaintiff, RONNIE V. JOHNSON, declares under penalty of perjury:

1. I am the Plaintiff in this case. My Complaint alleges I was denied necessary medical care by the defendants regarding my serious Hepatitis C-RNA viral infection condition. Additionally, Plaintiff's complaint alleges and charges the defendants with being deliberately indifferent to Plaintiff's serious medical problem and defendants' refusal to give Plaintiff care and treatment for that serious medical problem constituted the unnecessary and wanton infliction of pain on Plaintiff's body, or could lead to that result. Plaintiff submits this Statement of Undisputed Facts and this Declaration in support of Plaintiff's motion for summary judgment on Plaintiff's Eighth Amendment claim respecting the defendants' actions of deliberate indifference to Plaintiff's

serious medical needs which constitutes the unnecessary and wanton infliction of pain and injury on Plaintiff's body, or could lead to that result. (Plaintiff has not moved for summary judgment against defendants regarding the damages or injunctive relief that should be granted because there are clear factual disputes concerning such relief.)

2. Pro se Plaintiff, RONNIE V. JOHNSON, is an inmate in the Illinois Department of Corrections and is incarcerated at Danville Correctional Center. Plaintiff was so incarcerated at Danville Correctional Center during all relevant times mentioned in his complaint.

3. On January 5, 2004, Plaintiff was advised and informed by MOMODUO SALLAH, a Physicians Assistant employed by defendant Wexford Health Sources, Inc., at Danville Correctional Center's Health Care Unit, that Plaintiff had been diagnosed positively with Hepatitis C. Further, MOMODUO SALLAH on that same date informed Plaintiff that neither the Illinois Department of Corrections nor the Health Care Unit for the Danville Correctional Center will provide Plaintiff with treatment for Hepatitis C infection. Additionally, Plaintiff was advised and informed by MOMODUO SALLAH that Plaintiff was facing imminent death as a direct result of the Hepatitis C infection.

4. On January 21, 2004, Plaintiff filed an institutional grievance in which he complained of the Jan. 5, 2004 refusal by the Health Care Unit of the Danville Correctional Center to pro-

vide any care or treatment for Plaintiff's Hepatitis C infection. Plaintiff's grievance requested additional diagnostic testing be performed on him so that it can be determined to what extent the Hepatitis C infection has invaded Plaintiff's body and especially what effect has it had on Plaintiff's liver -- especially to determine what degree of liver damage had been done. And, Plaintiff requested a therapy of medical treatment, including interferon and ribavirin treatments, to cure and/or to minimize damages to his body by Hepatitis C infection. (SEE: Committed Person's Grievance Dated 01-21-04, hereto attached as EXHIBIT # 1).

5. On January 23, 2004, the grievance officer denied Plaintiff's 01/21/04 grievance. She (grievance officer) indicated that she had consulted with defendant MARY MILLER, Health Care Unit Administrator, and was informed that even though Plaintiff tested positively for Hepatitis C that Plaintiff was denied treatment for the infection because "he does not meet the criteria for treatment." (SEE: Response to Committed Person's Grievance, EXHIBIT # 2).

6. On February 9, 2004, Plaintiff appealed the denial of his 01/21/04 grievance to the Administrative Review Board. On February 11, 2004, the Administrative Review Board denied such appeal.

7. Between January 28, 2004 thru February 26, 2004, Plaintiff submitted twelve (12) requests to defendant MARY MILLER asking for a copy of the Criteria For Treatment of Hepatitis C of which she cited on 01/26/04 to the grievance officer as the reason why treatment for Plaintiff's Hepatitis C infection had been refused.

- 3 -

Additionally, Plaintiff requested of defendant MARY MILLER the basis upon which the Health Care Unit have not conducted any follow up serologic and liver biopsy testing concerning Plaintiff's Hepatitis C infection. Defendant MARY MILLER did not respond to any of Plaintiff's twelve (12) requests for the above mentioned information. (SEE: Resident Requests, hereto attached as EXHIBIT # 3).

8. Upon Plaintiff's information and belief, Hepatitis C is a viral infection that causes inflammation, injury and ultimately scarring of the liver. Hepatitis C is a progressive and a serious health problem. Especially, Hepatitis C is extremely dangerous if it damages the liver to the point of cirrhosis and liver failure. There is high mortality rate associated with chronic Hepatitis C infection. (SEE: National Digestive Diseases Information, hereto attached as EXHIBIT # 4).

9. Upon Plaintiff's information and belief, Chronic Hepatitis C is defined as inflammation of the liver caused by HCV that continues for more than six months. In people whith chronic Hepatitis C, the immune system has failed to clear the virus from the body. Therefore, all individuals with chronic hepatitis C will have an elevated HCV RNA. Once a person is chronically infected with HCV, the potential exists for liver damage and cirrhosis along with its complications, including liver failure and liver cancer. (SEE: (EXCERPT FROM) Guide to Hepatitis and Liver Disease, PP. 116-132, Melissa Palmer, MD, Published AVERY 2000) hereto attached as EXHIBIT # 5).

10. Upon Plaintiff's information and belief, Chronic Hepatitis C is indicated by elevated levels of transaminases (AST/ALT) in the chemistries of the blood. This is especially indicative if the transaminases levels remain elevated (usually around two to three times normal) after a six month period of time from the onset of the infection. (EXHIBIT # 5, PP. 116-117). Further, if the ALT assessment is normal or two times normal, an assessement for interferon/ribavirin drug therapy should be prescribed and if there is no contraindications to such drug therapy, referral for liver biopsy should be done. (SEE: <u>Federal Bureau of Prisons Guidelines for the Prevention & Treatment of Viral Hepatitis</u>, (Jan. 2003 ed.); PP. 6-28); (hereto attached as EXHIBIT # 6) (This EXHIBIT has been submitted to the Court and Plaintiff on March 18, 2005 by Defendant MARY MILLER).

11. Upon Plaintiff's information and belief, by measuring the levels of liver enzymes in the blood, doctors can monitor ongoing liver injury. This is so because, under normal conditions, the level of these enzymes (AST, ALT, GGT and Alkaline Phosphatase) in the bloodstream is relatively low. But when liver cells are injured, destroyed, or die, the cell becomes leaky, and the enzymes escape into the blood that is circulating through the liver. When the cell is injured, liver enzyme levels in the blood rise. Massive liver injury is associated with marked increases in ALT. (SEE <u>Living With Hepatitis C</u>, PP. 25-26, by Gregory T. Everson, MD., F.A.C.P., and Hedy Weinberg, Published Hatherleigh 2000); hereto attached as EXHIBIT # 6).

- 5 -

12. On October 23, 2003, the Health Care Unit at Danville Correctional Center advised Plaintiff that his liver enzymes tested high, in that: Plaintiff's ALT, AST and GGT levels measured more than 2 and 3 times the normal reference level; and, Plaintiff's Alkaline Phosphatase was more than 79 points beyond the baseline. On December 2, 2003, Plaintiff was advised by the Health Care Unit that his ALT, AST and GGT levels measured more than 2 and 4 times the normal reference level; and, Plaintiff's Alkaline Phosphatase was more than 78 points beyond the baseline. On January 8, 2004, the Health Care Unit advised Plaintiff that his AST and ALT levels measured more than 2 times the normal reference level. And, on April 16, 2004, the Health Care Unit advised Plaintiff that his AST, ALT and GGT levels measured more than the highest normal reference level. Prior to the above dates and measured liver enzyme levels, between the period of time dating from April 3, 2001 thru March 7, 2003, Plaintiff's AST and ALT levels measured slightly more than 2 times the normal reference levels.

On April 16, 2004, the Health Care Unit additionally advised Plaintiff that the blood specimen taken from him for testing tested positively for Hepatitis C Virus RNA. (Regarding the lab test results on the above mentioned measurements, SEE: EXHIBIT # 8).

13. Again, on February 27, 2004, Plaintiff complained by way of Committed Person's Grievance, that the medical care providers of Danville Correctional Center have completely ignored his requests and have refused either to discuss with Plaintiff defendant Wexford

- 6 -

Health Sources, Inc.'s, criteria for treatment of Hepatitis C, or, to perform any follow-up serologic testing and to conduct a liver biopsy.  In the grievance, defendants were informed that as a result of the lack of care and treatment of Plaintiff's Hepatitis C condition, an increasingly degenerative liver disorder, Plaintiff was suffering extreme anxiety, depression, aggravation, mental anguish, emotional distress, abdominal pain, diarrhea, nausea, vomiting, loss of appetite, weakness and tiredness.  Additionally, Plaintiff complained in the grievance that medical care providers had not conducted all of the standard preliminary tests necessary prior to their refusal to give Plaintiff any care or treatment for his Hepatitis C condition.  Again, the warden deferred to defendant MARY MILLER'S professional judgment that based on her representation that Plaintiff had been previously evaluated and a determination had been made to refuse treatment of Plaintiff's Hepatitis C condition because, as MARY MILLER indicated, Plaintiff was not a good candidate for Hepatitis C treatment.  (SEE: <u>Committed Person 's Grievance</u> Dated 02/27/04, hereto attached as EXHIBIT # 9).

14.  On March 2, 2004, Plaintiff complained to MARY NICHOLS, former Assistant Warden of Programs, about the lack of medical care and treatment concerning Plaintiff's Hepatitis C condition;  and of the deliberate indifference done by the defendants regarding Plaintiff's requests for such treatment.  (SEE: <u>Complaint letter</u>, hereto attached as EXHIBIT # 10).  Warden MARY NICHOLS directed the

grievance officer to investigate my complaints. (SEE: <u>Plaintiff's Complaint,</u> page 9).

15. On March 4, 2004, Plaintiff was seen by defendant Doctor RONALD SCHAEFER, MD. DOCTOR SCHAEFER advised Plaintiff that he was disqualified for Hepatitis C treatment because Plaintiff is a diabetic and that Plaintiff has a Hepatitis B coinfection. (SEE: Plaintiff's Complaint, page 9).

16. Contrary to defendant DOCTOR RONALD SCHAEFER'S findings and conclusions which affirmed the refusal to give Plaintiff any care and treatment for his Hepatitis C condition, under the Federal Bureau Of Prisons Guidelines for Hepatitis C Treatment (cited by defendants as the criteria used to refuse Plaintiff Hepatitis C Treatment): the fact of a diabetic condition and/or a Hepatitis B coinfection is not listed as an Absolute Contraindication for the Interferon/Ribavirin therapy treatment of a prisoner's hepatitis C condition. (SEE: <u>Federal Criteria for Hep-C Treatment</u>, EXHIBIT # 6, pages 6-26). Similarly, such conditions are not contraindications that such prisoner should not be referred for liver biopsy. (EXHIBIT # 6, pages 6-28).

Further, defendant DOCTOR RONALD SCHAEFER'S findings and conclusions were incorrect and did not justify the refusal to give Plaintiff care and treatment for his Hepatitis C condition, where: no evidence exists that Plaintiff suffers either uncontrolled or an uncontrollable diabetic condition <u>and</u> where a Hepatitis B panel test, performed on March 10, 2004, showed that Plaintiff was nega-

- 8 -

tive for a Hepatitis B coinfection. (SEE: EXHIBIT # 8; Note the normal serum glucose test results and the negative Hep. B coinfection findings).

17. Upon Plaintiff's information and belief, Plaintiff state that he suffered neither an uncontrolled or an uncontrollable diabetic condition or a Hepatitis B coinfection on March 10, 2004, or prior to that date when DOCTOR SCHAEFER, other defendants and the medical care providers at Danville Correctional Center cited the existence of such conditions as reasons to refuse Plaintiff care and treatment for his Hepatitis C condition.

18. In response to Plaintiff's April 14, 2004 grievance, regarding care and treatment of his Hepatitis C condition and Plaintiff's requests that a liver biopsy be performed and for examination by a specialist to treat his condition; defendant DOCTOR RONALD SCHAEFER admitted that blood tests indicated that no sign of Hepatitis B was present in Plaintiff's body and stated "that a liver biopsy would be performed on Plaintiff and a specialist doctor would be allowed to examine Plaintiff, if a PT/PTT blood test tested normal. (SEE: Grievance dated 04/14/04, hereto attached as EXHIBIT # 11).

19. Even though the PT/PTT blood tests were done on April 29, 2004, as ordered by defendant DOCTOR RONALD SCHAEFER and that Plaintiff tested "normal" under the test (with the PT showing a measurement of 12.1 in reference interval of 8.8 - 13.0 and the

PTT part of the blood test showing a measurement of 35 in the reference interval of 24-40); thereafter neither a liver biopsy was performed nor was Plaintiff scheduled to be examined by a liver specialist as had been expressed by defendant DOCTOR RONALD SCHAEFER. (SEE: EXHIBIT # 8, Blood test of 04/29/04 therein).

20. Upon Plaintiff's information and belief, defendants have done nothing to expedite the performance of a liver biopsy on him to determine the extent of liver inflammation and damage caused by Plaintiff's Hepatitis C viral infection. And, no liver specialist has been allowed to either examine or treat his Hepatitis C liver disease or to evaluate Plaintiff for a liver transplant.

21. For people with mild cases of Hepatitis C, combination drug therapy appears not only to be more likely to prolong life and to prevent complications such as cirrhosis, but also to be more cost-effective than a strategy of "watchful waiting." And, the best way to decide on a treatment is to analyze a small sample of liver tissue through a precedure called a biopsy. If the biopsy indicates cirrhosis, which is severe scarring of the liver, pre-cirrhosis or substantial inflammation of the liver, then most doctors would recommend treatment. (SEE: EXHIBIT # 12)

22. Once it has been medically determined that an individual has suffered irreversible liver injury and damage as a result of a Hepatitis virus infection, he/she should be considered a candidate for liver transplantation. Especially, if a liver biopsy

gives evidence of decompensated cirrhosis or any other manifestation of liver failure this is an indication for liver transplant. (SEE: Guide To Hepatitis & Liver Disease, PP. 314-315, hereto attached as EXHIBIT # 13).

23. The criteria for Hepatitis C treatment used and relied upon by defendants to refuse treatment to Plaintiff for his Hepatitis C condition contains no criteria regarding either the evaluation for or procedures to obtain a liver transplant for eligible candidates whose prognosis is terminal without a timely liver transplant. (SEE: EXHIBIT # 6).

24. Upon Plaintiff's information and belief, Plaintiff believes that due to either the restrictive and limited criteria for Hepatitis C treatment used and relied upon by defendants to make serious medical decisions, or, defendants' cost/analysis considerations concerning what cases they will treat, is directly responsible for the number of deaths due to Hepatitis C related illness under the defendants' treatment plan and policies.

25. All grievances Plaintiff has filed regarding defendants acts and omissions that have violated Plaintiff's constitutional rights, were appealed to the Administrative Review Board where they were denied.

## VERIFICATION

I, RONNIE V. JOHNSON, do swear, under penalty of perjury, that each fact and statement made in this document is true and correct to the best of knowledge, information and belief; and, as to those statements I have alleged based upon my information and belief, I believe them to be true and correct.  I DO SWEAR.

SUBSCRIBED and SWORN to before me this 16th day of May, 2005.

_____
Notary Public

"OFFICIAL SEAL"
ELIZABETH A. ROBSON
Notary Public, State of Illinois
My Commission Exp. 10-10-06

/s/ R— V. J—
_____
Pro se Plaintiff,
RONNIE V. JOHNSON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

URBANA DIVISION

| | | | |
|---|---|---|---|
| RONNIE V. JOHNSON, | ) | | |
| Plaintiff, | ) | | |
| | ) | CASE NO. | 04-2110 |
| vs. | ) | | |
| | ) | | |
| WEXFORD HEALTH SOURCES, INC., | ) | | |
| MARY MILLER, HEALTH CARE UNIT | ) | HONORABLE | Harold A. Baker |
| | | | Presiding Judge |
| ADMINISTRATOR, DOCTOR RONALD | ) | | |
| SCHAEFER, MD, | ) | | |
| Defindants. | ) | | |

BRIEF AND ARGUMENT

IN SUPPORT OF PLAINTIFF'S

<u>MOTION FOR SUMMARY JUDGMENT</u>

Respectfully submitted by:

*/s/ R. v. J.*

Plaintiff Pro se
RONNIE V. JOHNSON